IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY BOYNES, | Civil Action No. 2:15-cv-00139-CRE |
| Plaintiff, | MAGISTRATE JUDGE CYNTHIA REED EDDY |
| v. | |
| COUNTY OF LAWRENCE, SUSEN ROSSINO, M.D., FRANCES KLOSS, R.N., ROXANNE DEMONACO, R.N. and PRIMECARE MEDICAL, INC., | ELECTRONICALLY FILED |
| Defendants. | JURY TRIAL DEMANDED |

## DEFENDANT, COUNTY OF LAWRENCE'S, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Summary judgment is appropriate for several reasons. First, it is barred by the Prison Litigation Reform Act. A grievance process was available to Plaintiff. Plaintiff chose not to read his Inmate Handbook that explained the process. He did not file or pursue grievances by properly filing them or following them through the process to its conclusion. That is fatal to this claim.

Regardless that Plaintiff's suit is barred by the PLRA, summary judgment is appropriate as to all of the defendants, because Plaintiff received constitutionally-adequate medical care. A grant of summary judgment to PrimeCare requires the entry of summary judgment to the County because if medical was providing constitutionally-adequate medical care, nothing County did nor did not do proximately caused any harm.

{W0104745.1}

Lawrence County is entitled to summary judgment even if the case against the medical defendants survived. The policy in question requires medical professionals make medical decisions. The County contracted with PrimeCare to provide all medical services, both inside and outside of the LCCF, for its inmates. There is no evidence of these policies being the product of deliberate indifference, or of a pattern of similar problems.

As a practical matter, dismissal of the County will not harm Plaintiff. A County cannot be held liable for punitive damages. The compensatory damages in this case remain the same whether or not the County is in the case. Further, the County does not provide an alternate target for liability, because the County cannot be held liable here unless there is a finding against PrimeCare.

## II.   ARGUMENT

### A.   Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the non-moving party has the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-moving party's burden of proof at trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has demonstrated to the court that there is an absence of evidence to support the non-moving party's case, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Electric*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). Summary judgment is proper unless the record contains sufficient evidence favoring the non-moving party to enable a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

**B.      Plaintiff's claim is barred by the Prison Litigation Reform Act.**

In order to reduce the number of lawsuits filed by prisoners in the federal courts, Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e which provides:

> [n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other federal law by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e (a); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The Third Circuit has held that the PLRA should be interpreted as including a procedural default component. *Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d. Cir. 2004). "Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies." *Id.*

Although the availability of administrative remedies is a question of law, that question necessarily involves questions of fact. *Small v. Camden County*, 728 F.3d 265, 271 (3d. Cir. 2013) (citations omitted). Factual disputes concerning the issue of exhaustion are to be determined by the Court, not a jury. *Id.* at 269.

   1.      *The PLRA applies to the Plaintiff's claim.*

The PLRA applies to a "prisoner's" claim concerning "prison conditions." 42 U.S.C. § 1997e (a). That Plaintiff (1) was a prisoner and (2) that his claim concerns prison conditions encompassed by the PLRA is indisputable.

a. <u>The Plaintiff was a "prisoner" as defined by the PLRA.</u>

The term "prisoner" is defined in Section 1997e (h) as

> Any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

*Id*. The relevant date for determining whether the PLRA applies is whether the plaintiff was a prisoner on the date of initiating the lawsuit. *Perez v. Sweet*, 2008 WL 768136 (W.D. Pa. 2008 March 20, 2008). If a plaintiff is a prisoner on the date the lawsuit is filed, the PLRA applies; if he is not a prisoner on that date, the PLRA does not. *Id.* at *2 (citing *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir.2002); *Norton v. City of Marietta*, 432 F.3d 1145, 1150, (10th Cir.2005); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir.2005)).

As the Complaint makes clear, Plaintiff was an inmate at the time of the alleged incident. Complaint at ¶ 12. Plaintiff was also an inmate on the day the Complaint was filed. *Id.* at ¶ 4 (alleging "Plaintiff is currently incarcerated at SCI Mercer"). He was a "prisoner" as defined by the PLRA.

b. <u>Plaintiff's claim concerns "prison conditions" as defined by the PLRA and interpreted by the courts.</u>

The PLRA's exhaustion requirements clearly encompass the allegations in the Complaint. The courts have taken a broad interpretation of the term "prison conditions." *See, e.g., Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002) (holding that the exhaustion requirement of § 1997e(a) "applies to all inmate suits about prison life"). The Third Circuit "explained that 'actions arising under this clause relate to the environment in which prisoners

live, the physical conditions of that environment, and the nature of the services provided therein.'" *Almahdi v. Ridge*, 2006 WL 3051791 (3d. Cir. 2006) (quoting *Booth*, 206 F.3d at 295). That includes claims regarding medical care. *See, e.g., Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 526 (E.D. Pa. 2015), *aff'd sub nom.* 2016 WL 3230692 (3d Cir. June 13, 2016). Plainly, the PLRA is applicable to Plaintiff's claim.

    2.    *Plaintiff failed to exhaust his administrative remedies.*

          a.    <u>Administrative remedies, in the form of a grievance procedure and appeal, were available to Plaintiff at the Lawrence County Correctional Facility.</u>

There is no dispute that there was a grievance procedure available to the inmates at the Lawrence County Correctional Facility ("LCCF") Plaintiff admits that there was a grievance process, and in fact alleges that he filed a grievance while he was in the Lawrence County Correctional Facility, and another nine months after he had been transferred back to state prison. (Ex. A (Depo of Plaintiff) at 35). Plaintiff acknowledged that they are filled out on a request slip, *id.* at 36; and the request slips are available to inmates on the cell block. *Id.* at 87. In fact, he had a blank form that he brought with him when he left and went to state prison. *Id.* There is no allegation of any officer or other official denying a request for a form or interfering with Plaintiff's use of the grievance process in any manner. A grievance process was explained in the Inmate Handbook which Plaintiff received. *Id.* at 88, Ex. C (Inmate Handbook).

          b.    <u>Plaintiff failed to exhaust his administrative remedies.</u>

Plaintiff did not exhaust the administrative remedies available to him. Under the PLRA, "proper exhaustion" means "a prisoner must complete the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 126 S.Ct. 2378, 2384.

A facility's grievance procedures define what constitutes "proper exhaustion." As the Supreme Court stated in *Jones v. Bock*, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 923, 166 L. Ed. 2d 798 (2007); *see also Williams v. Prison*, No. CV 15-46 ERIE, 2016 WL 1213602, at *3 (W.D. Pa. Mar. 29, 2016)

The LCCF Inmate Handbook explained the procedure for filing a grievance. The Inmate Handbook explains that to file a grievance,

> Ask your Shift Commander for an Inmate Request Form. Fill out the form and return it to your Housing Unit Officer. The Form will be signed in your presence. The **Inmate Request Form** will then be sent through appropriate channels and you will receive a written response.

(Ex. C (Inmate Handbook, at 16) (emphasis in the original). Plaintiff received a copy of the Inmate Handbook when he first arrived at the LCCF. (Ex. A (Depo of Plaintiff) at 88). He was aware it contained "the rules and regulations of the facility." (Ex. A (Depo of Plaintiff) at 88). Plaintiff did not read the Lawrence County Inmate Handbook. (Ex. A (Depo of Plaintiff) at 89). When asked why he did not read it, he "didn't care too much for it." *Id*. His decision not to read the Inmate Handbook does not excuse Plaintiff's failure to follow the grievance procedure. *See Woodford, supra*.

Plaintiff claims that he filled out a grievance at some point during his incarceration concerning his medical care. He did not follow the procedure. He filled out the form and put in the mail for "Butch Weird." (Ex. A, (Depo of Plaintiff) at 86). He did not fill out the form in the

presence of his housing officer and get the grievance form signed. Because requests and grievances are filed on the same paperwork, there is no indication what Plaintiff filed (if he filed anything) was understood to be a grievance. Regardless, he never followed up, and never utilized the appeals process that was available to him. Even giving Plaintiff the benefit of the doubt that he did file something, what he did was not "proper exhaustion."

The grievance filed on November 18, 2013 is untimely and is not sufficient to exhaust his administrative remedies. The grievance policy requires that a grievance be filed within five days of the occurrence being grieved. (Ex. C). This grievance was filed nine months after Plaintiff had left the facility. (Ex. A (Depo of Plaintiff) at 32-33; Ex. D (Grievance). That is not sufficient. As the Supreme Court of the United States explained, the purpose of having administrative remedies is to allow an agency to correct its mistakes before having to defend itself in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 2385, 165 L. Ed. 2d 368 (2006). Further, addressing complaints by way of administrative remedy is more efficient than federal litigation. *Id*. Filing nine months after a prisoner is released, therefore, undermines the very purpose of having a grievance process.

Because Plaintiff failed to follow the procedure and did not exhaust the process through his available appeals, the PLRA divests this Honorable Court of jurisdiction to hear this case. The PLRA requires dismissal with prejudice.

### C. Summary judgment is appropriate in the County's favor on Plaintiff's claim of deliberate indifference to serious medical needs.

#### 1. The claims against Lawrence County cannot survive dismissal of the civil rights claims against the medical defendants.

Plaintiff's claim also fails on the merits. The other Defendants will rightly argue that there was no deliberate indifference and show that Plaintiff was regularly receiving medical treatment. If the medical defendants are dismissed, the claims against Lawrence County fail as a matter of law.

There can be no entity liability without an underlying civil rights violation. *See, e.g., Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)); *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008) ("Because we have found that there was no violation of Appellants' constitutional rights, we need not reach the claim against the City under *Monell*."). In short, Plaintiff cannot impose liability on the County without first imposing liability on PrimeCare Medical, Inc. Given the extensive medical records for Plaintiff's treatments, and the difficult standard that deliberate indifference poses, it is respectfully submitted that the case will fail on its merits against the health care defendants. If that occurs, the claim against the County necessarily fails.

#### 2. None of the concerns raised by the Court are supported by the record evidence.

The only reason the County is still in the case is that the Court held the following in its ruling on Motions to Dismiss:

> Boynes has specifically alleged that the County itself engaged in unconstitutional conduct regarding its alleged policies of hiring, supervising, training, and equipping the prison's medical workers. As a result, the Court finds that Boynes should also be given the opportunity to engage in discovery regarding his claim that the County had in place policies that violated his Eighth Amendment rights.

Memorandum Opinion, ECF Doc. 35 at 11 (granting in part and denying in part the parties' Motions to Dismiss). None of Plaintiff's suspicions in that regard are supported by evidence.

Addressing each of the concerns raised by the Court relative to the County, the County did not "hir[e], supervis[e], train[], [or] equip[] the prison's medical workers." *Id.* The relationship between PrimeCare and the County is governed by a contract, the "Comprehensive Health Services Agreement." Ex. B. As the Comprehensive Health Services Agreement makes clear, Lawrence County did not hire any of the health care providers. All were hired by PrimeCare. *Id.* at § 11. All are employees or independent contactors of PrimeCare. *Id.* Lawrence County was not responsible for training the medical professionals. The named Defendants are licensed professionals, so it is difficult to envision what type of "training" the County could have provided them. The Comprehensive Health Services Agreement places no such obligation on the County. To the contrary, the Agreement states that PrimeCare will be responsible for ensuring that all of its healthcare providers have the requisite licensure. *Id.* at § 20.

More importantly, under the Agreement, PrimeCare has autonomy over health care decisions for the LCCF's inmates. *Id.* at § 21. The "decisions and actions regarding health care services provided to inmates/patients are the sole responsibility of qualified health care personnel and cannot be compromised for security reasons; thus all decisions involving the exercise of medical . . . judgment are the responsibility of Company [PrimeCare] and its health

care practitioners." *Id.* The equipping of the medical department is PrimeCare's responsibility, but frankly that is a red herring. If being sent outside the facility for evaluation is required, that is PrimeCare's responsibility. *Id.* at § 3. (PrimeCare will provide for "outside hospitalization for inmates/patients as medically warranted"). All such decisions are made by PrimeCare's health care professionals. *Id.*

What the Agreement reveals, and PrimeCare will readily concede, the County was not responsible for hiring, supervising, training, or equipping the prison's medical professionals. None of the potential issues listed by the Court are supported by the evidence.

3.  *The County's policies were not the product of deliberate indifference.*

To the extent that a County policy or practice at issue in this case, it would likely be the practice of having medical professionals provide care in accordance with the terms of the Comprehensive Health Services Agreement.

Where a municipal policy or custom is alleged to have caused a violation of a person's civil rights, ability will only be imposed where the policy or custom was maintained with "'deliberate indifference' to its known consequences." *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). This occurs where "the municipality had notice that prior civil rights violations had occurred on such a widespread basis that they were likely to occur again and (2) failed to address the risk despite the known or obvious consequences of inaction." *Peters v. Community Edu. Centers, Inc.*, 2014 WL 981557 at *4 (E.D. Pa. Mar. 13, 2014) (citing *Berg*, 219 F.3d at 276; *Beck*, 89 F.3d at 975). "Notice is generally established by a pattern of prior constitutional violations." *Id.* (citing *Berg*, 219 F.3d at 276; *Beck*, 89 F.3d at 975).

There is no basis to conclude that the contractual arrangement was the product of deliberate indifference. No "prior civil rights violations had occurred on such a widespread basis that they were likely to occur again[.]" *Id.* There is no evidence of any widespread problems with medical care at the LCCF. The claim against Lawrence County fails on this basis. *Turtle v. Wingard*, No. CIV.A. 14-164, 2014 WL 7213191, at *9 (W.D. Pa. Dec. 17, 2014). ("Plaintiffs have failed to aver other instances besides those relating to Plaintiff that would have put County decision-makers on notice that this practice was being used to delay necessary medical treatment for nonmedical reasons, causing undue pain and suffering." "That is, Plaintiffs have failed to allege specific facts demonstrating that the County Defendants were on notice that a constitutional violation like the one allegedly sustained by Plaintiff could occur, and County decision-makers acted with deliberate indifference to that risk.") (citing *Berg*, 219 F.3d at 276).

4. *The policies and customs were not the proximate cause of harm.*

In order to prove a claim against the County, Plaintiff must also prove that the municipal policy or custom was the proximate cause of his or her injuries. *Estate of Thomas v. Fayette County*, 2:14-cv-00551, --- F.Supp.3d ---, 2016 WL 3639887 at *16 (W.D. Pa. July 8, 2016) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)). See also *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Thomas*, 2016 WL 3639887 at *16 (quoting *Bielevicz*, 915 F.2d at 850; citing *Estate of Bailey by Oare v. Cty. of York*, 768 F.2d 503, 507 (3d Cir. 1985) (There must be a "plausible nexus between the policy . . . and the infringement of constitutional rights.");

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[T]here must be an affirmative link between the policy and the particular constitutional violation alleged.")).

A plaintiff's burden to prove causation also applies to failure to train and failure to supervise claims. *Id*. at *17 (citing *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 125 (3d Cir.2003) (failure to train); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (requiring, for supervisory liability, that "the underlying's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.")).

Here, the policy of allowing medical professionals to make the medical decisions did not cause any harm. Nor did the agreement with PrimeCare that defined the respective responsibilities with regard to health care. Summary judgment should be entered in the County's favor.

> 5.   *Practical considerations also weigh in favor of dismissal of the County, because the County does not provide an independent target for liability, and its remaining in the case cannot increase Plaintiff's damages.*

Finally, it bears mention that keeping Lawrence County in this case will be of no benefit to Plaintiff. A grant of summary judgment to the County will not harm the Plaintiff's case because they would not provide Plaintiff with an alternate target, and would not increase the available damages. The County does not provide an alternate target- there cannot be liability of the County independent of PrimeCare Medical, Inc. As is explained in Section C1 of this Brief, in a case like this to get to the county you have to get to the medical provider first.

Nor could keeping the County in the case increase Plaintiff's damages. Punitive are not available as a matter of law against Lawrence County. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (punitive damages not available against municipalities under 42 U.S.C. §

1983). This case is for compensatory damages only. Punitive damages are not available as matter of law. There is one harm- an alleged delay in treating a broken arm. The correct measure of compensatory damages is unchanged regardless of whether or not the County remains a defendant. Plaintiff would not be entitled to a duplication of damages due to a finding against more than one defendant.

Summary judgment in favor of the County is required for the reasons set forth in the preceding sections of this Brief. As a practical matter, dismissal of the County will not adversely affect the Plaintiff and will limit the need to spend taxpayer dollars defending the case at trial.

## III. CONCLUSION

For all of these reasons, summary judgment should be entered in favor of Lawrence County.

    Respectfully submitted,

    JonesPassodelis, PLLC

    By: s/Michael R. Lettrich
        MICHAEL R. LETTRICH, ESQUIRE
        PA I.D. #80635
        E-Mail: mlettrich@jonespassodelis.com

        MARIE MILIE JONES, ESQUIRE
        PA I.D. #49711
        E-Mail: mjones@jonespassodelis.com

        Gulf Tower, Suite 3510
        707 Grant Street
        Pittsburgh, PA 15219
        Phone: (412) 315-7272
        Fax: (412) 315-7273

        Counsel for Defendant, County of Lawrence

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded to counsel of record by:

\_\_\_\_\_ U.S. First Class Mail, Postage Paid

\_\_\_\_\_ Hand Delivery

\_\_\_\_\_ Certified Mail, Return Receipt Requested

\_\_\_\_\_ Facsimile Transmittal

\_\_\_\_\_ UPS Delivery

__X__ Electronic Filing/Service

at the following address:

Louis J. Kroeck, IV, Esquire
ANSTANDIG, McDYER AND YURCON
707 Grant Street, Suite 1300
Pittsburgh, PA 15219
*(Counsel for Plaintiff)*

John R. Ninosky, Esquire
Johnson, Duffie, Stewart & Weidner
301 Market Street
P.O. Box 109
Lemoyne, PA 17043-0109
*(Counsel for Defendants, PrimeCare Medical, Inc., Roxanne Demonaco, LPN and Fran Kloss, LPN)*

Terry C. Cavanaugh, Esquire
Brett C. Shear, Esquire
Marshall Dennehey Warner Coleman & Goggin
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA 15219
*(Counsel for Defendant, Susen Rossino, M.D.)*

JONESPASSODELIS, PLLC

Date: September 27, 2016

 s/Michael R. Lettrich
MICHAEL R. LETTRICH, Esquire
MARIE MILIE JONES, Esquire

Counsel for Defendant, County of Lawrence