**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HENRY BOYNES, | : | NO. 2:15-CV-00139-CRE |
|     Plaintiff | : | |
| | : | CIVIL ACTION – LAW |
| v. | : | |
| | : | MAG. JUDGE CYNTHIA REED EDDY |
| COUNTY OF LAWRENCE, | : | |
| SUSEN ROSSINO, M.D.; | : | *ELECTRONICALLY FILED* |
| FRANCES KLOSS, R.N.; | : | |
| ROXANNE DEMONACO, R.N.; and | : | |
| PRIMECARE MEDICAL, INC., | : | JURY TRIAL DEMANDED |
|     Defendants | : | |

**MEDICAL DEFENDANTS' BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

AND NOW, come Defendants Frances Kloss, RN, Roxanne Demonaco, RN, and PrimeCare Medical, Inc. (hereinafter collectively referred to as "Medical Defendants"), by and through their counsel, Johnson, Duffie, Stewart & Weidner, P.C., who file this Brief in Support of their Motion for Summary Judgment as follows:

**I.   PROCEDURAL HISTORY**

Plaintiff initiated this action by Complaint (Doc. 1) filed on February 3, 2015. The undersigned entered his appearance (Doc. 3) on behalf of PrimeCare Medical, Inc., Roxanne Demonaco, and Frances Kloss on February 23, 2015. The Medical Defendants filed a Waiver of Service of Summons (Doc. 6) for the Medical Defendants on March 18, 2015. The Medical Defendants filed a Motion to Dismiss and Brief in Support (Docs. 7 and 8) on March 26, 2015.

Plaintiff filed a Certificates of Merit as to Demonaco (Doc. 22), Kloss (Doc. 23), and PrimeCare Medical (Doc. 24) on June 23, 2015.

This Honorable Court entered an Opinion (Doc. 35) and Order (Doc. 36) denying the Defendants' Motions to Dismiss on December 16, 2015. Thereafter, the Medical Defendants filed an Answer with Affirmative Defenses (Doc. 37) on December 23, 2015.

Medical Defendants affirmatively plead the Defense of Failure to Exhaust Administrative Remedies ("PLRA") and statute of limitations. (Doc. 3)

II.  **FACTS**

This is a § 1983 negligence and Monell cause of action against the Medical Defendants arising out of the Plaintiff's incarceration at the Lawrence County Jail from May 4, 2012, to January 31, 2013, when the Plaintiff was thereafter transferred from the facility. In the Plaintiff's Complaint, he maintains that he sustained a slip and fall injury in the shower in September of 2012. (Doc. 1)

The Plaintiff was first processed by PrimeCare Medical on May 4, 2012 and underwent an intake health assessment and suicide screening. (See, Intake Suicide Screening at **Exhibit A** and Receiving Screening/Health Assessment at **Exhibit B**.)

Plaintiff received a Lawrence County Inmate Handbook, upon intake, and acknowledged receipt of this handbook. The Handbook outlines the facility's Grievance Procedure. (See, Boynes Depo., p. 88, lines 9-22 at **Exhibit L**.)

On July 11, 2012, the Plaintiff was seen in medical by Nurse Demonaco for complaints of back and arm pain. Plaintiff was prescribed Ibuprofen, 200 mg. (See, treatment note of July 11, 2012, at **Exhibit C**. Plaintiff continued to receive the Ibuprofen from July 11 through July 18, 2012. (See, Medication Administration Record at **Exhibit D**.)

Plaintiff entered a sick call request on July 18, 2012, requesting Ibuprofen for his shoulder and back.  (See, Sick Call/Medical Request of July 18, 2012, at **Exhibit E**.) Plaintiff was seen for his complaints on July 18, 2012, by Nurse Dennis. It was noted that he had continued complaints of shoulder and back pain. (See, treatment note of July 18, 2012, at **Exhibit F**.)

Plaintiff presented to Nurse Demonaco on July 26, 2012, with continued complaints of left shoulder pain. It was noted that he had fallen on his elbow and shoulder. At that time, the Plaintiff was prescribed Motrin 800 mg.  (See, treatment note and Telephone/Verbal Order Form of July 26, 2012, at **Exhibit G**.)

Plaintiff put in a sick call slip on August 22, 2012 with complaints of pain in the arm, back and shoulder.  (See, Sick Call/Medical Request of August 22, 2012, at **Exhibit H**.)

Plaintiff was seen by Nurse Demonaco on August 23, 2012.  Nurse Demonaco noted that he had sustained an old trauma to the left shoulder.  (See, treatment note of August 23, 2012, at **Exhibit I**.)

Plaintiff was seen by Dr. Susen Rossino on August 28, 2012, in the Chronic Care Clinic. (See, Chronic Care Sick Call note of August 28, 2012, at **Exhibit J**.)

The records do not reveal any complaints of a slip and fall or injury to the Plaintiff's elbow throughout the month of September.

13. Dr. Rossino then evaluated the Plaintiff on November 29, 2012, as a part of the Chronic Care Clinic. At that time, there was no reference of any complaints regarding his elbow or a slip and fall. (See, Chronic Care Sick Call note of November 29, 2012, at **Exhibit K**.)

Plaintiff was thereafter transferred from the facility in on February 1, 2013.

Plaintiff testified that he filed a grievance with a State Representative by the name of Butch Weird. (See, **Exhibit L**, p. 20, lines 6-11.) This is in contravention to any written policy in the Lawrence County Handbook. (See, Lawrence County Corrections Inmate Handbook at **Exhibit M**.)

19.  Moreover, as noted above, this alleged incident occurred in "September 2012." (Doc.1 at ¶ 12)  Plaintiff testified at the time of his deposition that the incident "could have been July, August, September." (See, **Exhibit L**, p. 38, lines 5-12.)

III.  <u>ISSUES PRESENTED</u>

    A.  SHOULD THIS HONORABLE COURT GRANT THE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WHERE PLAINTIFF CANNOT DEMONSTRATE THAT HE HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES?

        <u>Suggested Answer</u>:  Yes

    B.  SHOULD THIS HONORABLE COURT GRANT THE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS THE PLAINTIFF FAILED TO FILE HIS COMPLAINT WITHIN THE APPLICABLE STATUE OF LIMITATIONS FOR PERSONAL INJURY ACTIONS IN PENNSYLVANIA?

        <u>Suggested Answer</u>: Yes

IV.  <u>ARGUMENT</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment, and states in relevant part,

4

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The United States Supreme Court has held:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

There is an issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d. Cir. 1995).

### A. PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE GRIEVANCE PROCESS UNDER THE PRISON LITIGATION REFORM ACT AND AS SUCH HIS COMPLAINT FAILS AS A MATTER OF LAW.

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, Section 1997e of Title 42 of the United States Code provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002).

"[I]t is beyond the power of this court - or any other - to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (internal quotation marks and citations omitted). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Id., at 71.  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id., at 90-91.  This includes administratively appealing an adverse agency decision where applicable.  See, Booth v. Churner, 532 U.S. 731, 735, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001) (affirming dismissal without prejudice where the plaintiff filed an administrative grievance but failed to appeal administratively after prison authority denied relief prior to filing complaint in federal court).  Such requirements "eliminate unwarranted federal-court interference with

the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Ngo, 548 U.S. at 93 (*quoting* Nussle, 534 U.S. at 525). Failure to comply with the procedural requirements of a prison's grievance system results in a procedural default of the claim. See, Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.").

In the present matter, the Plaintiff maintains that he filed a grievance while incarcerated at the Lawrence County facility and filed a grievance in or around November 18, 2013, while he was outside of the Lawrence County facility. Despite the Plaintiff's contention that he filed a grievance during his stay at Lawrence County Jail and after the September 2012 accident, Plaintiff has failed to present any evidence of this prior grievance. In fact, none of the Defendants in this case have copies or have been provided copies of the grievance which has purportedly been filed. Moreover, Plaintiff's testimony reflects that he filed the grievance with a "Mr. Weird" a State Representative. This is in contravention to the policy as outlined in the Inmate Handbook.

The grievance mailed on November 18, 2013, was nearly one year and two months after the Plaintiff's alleged incident. According to the Lawrence County grievance procedure, all inmates must file "grievances within 5 days of the date the incident took place." Thereafter, the administration has 15 working days to response to the grievance. (See, Lawrence County Corrections Inmate Handbook, **Exhibit M**, pp. 18-19.) Plaintiff was certainly on notice of said procedure. Plaintiff testified that he received a copy of the Inmate Handbook upon his intake at the Lawrence County facility. (See, **Exhibit** L, p. 88,

lines 9-22.)  As such, pursuant to Woodford, proper exhaustion compliance must meet with the agency's deadline or other critical procedural rules.  Id., at 90-91.  As the court noted in Woodford, no adjudicative system can "function effectively without imposing some orderly structure on the course of its proceedings."  It is clear, therefore, that the Plaintiff's untimely filing of a grievance nearly one year and two months after the incident is insufficient to exhaust his available administrative remedies.  Additionally, Plaintiff has failed to produce any evidence that a prior grievance was filed and, as such, Plaintiff is barred from bringing forth this action as a matter of law.

>   B.   **PLAINTIFF HAS FAILED TO FILE HIS ACTION PRIOR TO THE EXPIRATION OF THE STATUTE OF LIMITATIONS, AND AS SUCH, THE PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW**.

Title 42 U.S.C.A. §1988 contains a borrowing provision which adopts the statute of limitations for personal injury actions in the state where the suit is filed.  Kost v. Kozakiewicz, 1 F.3d 176, 189-190 (3d Cir. 1993).  In Wilson v. Garcia, 471 U.S. 261, 105 S. Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined after extensive discussion that all § 1983 actions should be classified as claims for personal injury for the purpose of determining the limitations period under the applicable state law.  Garcia, 471 U.S. at 272-76, 280.  Pennsylvania's statute of limitations on personal injury actions is two (2) years.  42 Pa. Cons. Stat. Ann. § 5524; Epps v. City of Pittsburgh, 33 F.Supp.2d 409 (W.D. Pa. 1998).

Generally, a "cause of action accrues, and the statute of limitations begins to run, when the Plaintiff knew or should have known of the injury upon which [his] action is based.  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) ("the length of the statute of

limitations for a § 1983 claim is governed by the personal injury tort law of the state where the action arose . . . [which] in Pennsylvania is 2 years." *citing* Wallace v. Kato, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa.C.S. § 5524(2).  Moreover, a claim for negligence based on medical care and/or medical malpractice is also governed by Pennsylvania's two-year statute of limitations as set forth in 42 Pa.C.S. §5524(2).  Wilson v. El-Eaief, 1964 A.2d 354, 356 (Pa. 2009).  As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers the injury, even if the full extent of the plaintiff's injury is not known or predictable at that time. Kubrick, 444 U.S. at 120 (1979).

While there are certain exceptions to the statute of limitations provision for personal injuries in Pennsylvania, the Plaintiff has not demonstrated any exceptions to the rule.  It is anticipated the Plaintiff may argue that the "discovery rule" is applicable to this matter; however, it is clear that the Plaintiff would have been aware or put on notice of any injuries that he sustained in the slip and fall in September of 2012. Taylor v. Tukanowicz, 290 Pa. Super. 581, 435 A.2d 181 (1981).

Based upon the foregoing law and allegations in the Complaint, the Plaintiff maintains that he sustained this injury in September of 2012. It should be noted, though, that the Plaintiff indicated he did not keep good records and/or notes regarding this injury, and it certainly could have happened before September of 2012, possibly in August, July, or June.  (See, **Exhibit L,** p. p. 38, lines 5-12.)  It is clear from the medical records that Plaintiff continued to receive treatment for his chronic condition by the Medical Defendants. However, viewing the facts of the Complaint in a light favorable to the

Plaintiff, it is clear that, at the very latest, any medical treatment that would have been rendered by the Lawrence County Jail would have ended in January of 2013 as the Plaintiff was transferred from the facility on February 1, 2013.  This lawsuit was not filed until February 3, 2015, approximately 2½ years after the date of loss and several days after the last date of treatment. Most importantly, however, Plaintiff would have been on notice of his alleged injury in September of 2012.  It is clear, under Pennsylvania law, that even if the full extent of the Plaintiff's injury was not known until after September, he was required to file the Complaint within two years from the date of the incident.  There is no explanation for the Plaintiff's failure to file a Complaint prior to the statute of limitations.  Furthermore, Plaintiff took no steps to notify the Defendants of the action by any other means.

    WHEREFORE, Defendants Frances Kloss, RN, Roxanne Demonaco, RN, and PrimeCare Medical, Inc., respectfully request that this Court grant their Motion for Summary Judgment, and dismiss Plaintiff's claims against them, with prejudice.

                Respectfully submitted,

                JOHNSON, DUFFIE, STEWART & WEIDNER

                By:    s/John R. Ninosky
                        John R. Ninosky, Esquire
                        Attorney I.D. No. 78000
                        301 Market Street ~P. O. Box 109
                        Lemoyne, PA  17043-0109
                        Telephone (717) 761-4540
                        Email:  jrn@jdsw.com
                        Attorneys for PrimeCare Medical Defendants

Date:  September 27, 2016
812366

## CERTIFICATE OF SERVICE

I hereby certify on the 27th day of September, 2016, that the foregoing *Brief of Medical Defendants in Support of their Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Louis J. Kroeck, IV, Esquire
Anstandig, McDyer and Yurcon
707 Grant Street, Suite 1300
Pittsburgh, PA  15219
lkroeck@gmail.com
*Attorney for Plaintiff*

Marie Milie Jones, Esquire
Michael R. Lettrich, Esquire
JonesPassodelis, PLLC
Gulf Tower, Suite 3510
707 Grant Street
Pittsburgh, PA  15219
mjones@jonespassodelis.com
mlettrich@jonespassodelis.com
*Attorney for County of Lawrence*

Terry C. Cavanaugh, Esquire
Brett C. Shear, Esquire
Marshall Dennehey Warner Coleman & Goggin
US Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
tccavanaugh@mdwcg.com
bcshear@mdwcg.com
*Attorney for Susen Rossino, M.D. (incorrectly identified as Dr. John Doe)*

JOHNSON, DUFFIE, STEWART & WEIDNER

By:   s/John R. Ninosky
          John R. Ninosky