IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HENRY BOYNES, | ) | |
| Plaintiff, | ) | Civil Action No. 15-139 |
| v. | ) | |
| COUNTY OF LAWRENCE, SUSEN ROSSINO, M.D.; FRANCES KLOSS, R.N; ROXANNE DEMONACO, R.N., and PRIMECARE MEDICAL, INC., | ) | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Cynthia Reed Eddy, United States Magistrate Judge.[1]**

Plaintiff Henry Boynes, a former state prisoner, initiated this action through his counsel while he was incarcerated at SCI-Mercer. In May 2012, pursuant to a nine-month temporary prisoner transfer program, Plaintiff was transferred to the Lawrence County Correctional Facility ("LCCF"). In July 2012, while confined at LCCF, Plaintiff slipped and fell in his cell, sustaining injuries to his elbow and back. From the time of his fall until he was transferred back to SCI-Mercer in February 2013, Plaintiff claims that Defendants – Lawrence County, the contract medical provider at LCCF, and certain medical professionals at LCCF – refused to give him appropriate medical treatment despite his continuous and repeated requests. When he arrived at SCI-Mercer, it was immediately discovered via x-ray that he fractured his elbow when he fell in his cell several months earlier. In this action, Plaintiff brings a claim under 42 U.S.C. §1983 for

---

[1] In accordance with 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have the undersigned conduct any and all proceedings in this matter, including the entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit. (ECF Nos. 19, 20, 21, 28).

1

violation of the Eighth Amendment, claiming that Defendants' treatment of his injuries (or lack thereof) constituted cruel and unusual punishment. He also asserts state law claims for professional and corporate negligence against all of the Defendants except Lawrence County.[2]

There are currently three pending motions for summary judgment filed by Defendants. (ECF Nos. 61, 63, 67). The parties have limited these motions to only two issues: (1) whether Plaintiff has complied with the mandatory exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); and (2) whether Plaintiff's claims are barred by the applicable statute of limitations. *Id.*; *see also* (ECF Nos. 55, 56). The Court has carefully reviewed the complaint and all of the pending motions, legal memoranda, concise statement of material facts and counterstatements, and appendices submitted by the parties. (ECF Nos. 1, 61-81). For the reasons that follow, the Court agrees with Defendants that Plaintiff has failed to properly exhaust his administrative remedies in accordance with the PLRA. As a result, the Court will enter summary judgment in favor of Defendants on Plaintiff's Eighth Amendment claim, and will decline to exercise supplemental jurisdiction over his remaining state law negligence claims.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if, when "view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in that party's favor," the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is

---

[2] Plaintiff's negligence claim against Lawrence County was dismissed by the Court on December 16, 2015. *See* (Memo. Op. & Order, ECF Nos. 35, 36).

2

material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although Plaintiff is no longer a prisoner, he was a prisoner at the time that he filed this action.[3] Therefore, Plaintiff's § 1983 claim is subject to the PLRA's mandatory exhaustion requirement. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (holding that a former prisoner who filed his complaint before his release was bound by the PLRA). The mandatory exhaustion requirement of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Thornton v. West*, 529 Fed. App'x 107, 109 (3d Cir. 2013) (applying the PLRA's exhaustion requirement to a prisoner's Eighth Amendment medical needs claim).

The Supreme Court has construed § 1997e(a) as requiring "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, an inmate merely needs to comply with the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* Additionally, proper exhaustion requires that the prisoners comply with the deadlines set by the grievance policy. *Id.* at 217-18 (citing

---

[3] *See* (Compl. at ¶ 4, ECF No. 1) ("Plaintiff Boynes is currently incarcerated at SCI Mercer…").

*Woodford*, 548 U.S. at 93-95). In this case, the grievance procedure at LCCF was set forth in the Lawrence County Corrections Handbook ("Handbook"). *See Concepcion v. Morton*, 306 F.3d 1347, 1352 (3d Cir. 2002) (holding that "relatively informal grievance procedure[s]," which were not promulgated by an administrative agency, but instead established by the prison administrators and published in the inmate handbook were "administrative remedies" that must be exhausted); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (prison grievance procedures "supply the yardstick" for determining what steps are required for exhaustion).

The grievance procedure set forth in the Handbook is as follows.[4] All inmates have the right to file a complaint/grievance concerning violations of prison policy by staff members, unnecessary or excessive use of force by staff members, unsafe conditions existing within the facility, and unfair disciplinary actions. Inmates have the "absolute right to file grievances without fear of retaliation from the prison staff." If the inmate has a grievance, the inmate should first attempt to resolve the problem informally by discussing it with the Housing Unit Officer, and then if the inmate is still unsatisfied, ask to speak to the Shift Commander. If the problem is still unresolved after speaking with the Shift Commander, then the inmate may submit a Grievance to the Deputy Warden of Security. The grievance is to be filled out on an "Inmate Request Form." The inmate is directed to return the completed Inmate Request Form to his Housing Unit Officer, where the form will be signed in the inmate's presence and will be sent through the proper channels. The procedure states, **"REMEMBER ! You must file your grievance within five (5) days of the date the incident took place!"** The Deputy Warden of Security reviews the grievance and issues a written response to the inmate, which may be appealed to the Warden within two days after the inmate receives it. The decision of the Warden

---

[4] All of the Defendants have provided a copy of the Handbook in their appendices. *See* (ECF Nos. 66-3, 70-13, 72-3). The grievance procedure is on pages 16 and 17 of the Handbook.

is final.

When Plaintiff arrived at LCCF, he was given a copy of the Handbook, which he kept in his cell. However, he chose not to read it because he was unhappy that he was transferred to LCCF.[5] Plaintiff claims that he submitted two grievances relating to his failure to receive medical treatment: one while he was confined at LCCF, and one about nine months after he was transferred from LCCF back to SCI-Mercer. Although Defendants failed to retain either grievance, Plaintiff produced the latter grievance.[6] As discussed below, it is clear from Plaintiff's deposition testimony that, despite Defendants' failure to retain the grievances, Plaintiff did not properly exhaust either grievance. The Court notes that when Plaintiff filed his documents in opposition to summary judgment, he included a vague and conclusory affidavit that contradicted his earlier and more detailed deposition testimony.[7] The affidavit was electronically signed by Plaintiff on the same date that he filed all of his documents in opposition to summary judgment. Plaintiff provides no explanation whatsoever for submitting the

---

[5] Specifically, Plaintiff testified in his deposition as follows:
  Q. When do you normally receive an inmate handbook?
  A. When you first come into the prison.
  Q. At Lawrence County do you remember getting an inmate handbook?
  A. I believe I did get one.
  Q. Okay. Is that something that the inmate keeps with them in their cell?
  A. Yes.
                              ***
  Q … Do you remember if you read your inmate handbook at the Lawrence County Jail?
  A. I didn't.
  Q. Do you remember why it was that you didn't read your inmate handbook?
  A. No -- well, actually I do because in my eyes I should have never been there in the first place. I'm not from Lawrence County. I'm a state prisoner doing five to ten and I should have never been in Lawrence County period whatsoever. I was sentenced to a state correctional facility.
  So, that's one of the reasons why I didn't read it. I didn't care too much for it.
Pl.'s Dep. at 88-89.
[6] Pl.'s Ex. E, ECF No. 74-5.
[7] Pl.'s Ex. C, ECF No. 74-3.

5

conflicting affidavit. As such, the Court will disregard the affidavit pursuant to the "sham affidavit" doctrine.[8] The Court will now explain why both of his grievances were not properly exhausted.

---

[8] Under the "sham affidavit" doctrine, "[w]hen a deponent's post-deposition affidavit conflicts with his prior testimony, a district court may disregard the affidavit to prevent a party from 'creat[ing] a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 639 F. App'x 874, 877 & n. 5 (3d Cir. 2016) (quoting *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) and citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 269–70 (3d Cir.2010) and *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir.2007)); *see also See Martin v. Merrel Dow Pharm, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment.").

In his affidavit, Plaintiff asserts that he was "[a]t all times relevant in this matter familiar with the grievance procedure at [LCCF]." (Pl.'s Ex. C at ¶ 1). While Plaintiff expressed some basic familiarity in this deposition as to the difference between a grievance and a request slip**,** *see* (Pl.'s Dep. at 88), it is clear that he was not actually familiar with any of the relevant provisions of the grievance procedure at LCCF. He admitted in his disposition that he did not read the Handbook "because he didn't care too much for it," and, as will be explained below, he acknowledged that he did not know "how the grievance policy works down there" at LCCF. *Id*. at 36, 89. Because Plaintiff offers no explanation for this conflicting statement contained in his affidavit, it will be disregarded.

Additionally, Plaintiff asserts in his affidavit, in conclusory fashion without any factual support, that he "was instructed by *prison staff* to file grievances with [his] state representative [Butch Weird] while in the custody of [LCCF]." (Pl.'s Ex. C at ¶ 2) (emphasis added). This statement directly conflicts with his prior deposition testimony. As will be discussed below, Defendants questioned Plaintiff at length in his deposition about filing a grievance with Mr. Weird. Plaintiff testified that Mr. Weird, not any other prison staff members, told Plaintiff to file a grievance. When he was deposed, Plaintiff did not identify any other conversations that he had with staff members at LCCF regarding the filing of grievances. Aside from this conclusory affidavit that does not identify the unknown staff or provide any details and context relating to their instructions, there is no evidence in the record that someone other than Mr. Weird told Plaintiff to file a grievance. Because Plaintiff offers no plausible explanation for this portion of his affidavit conflicting with this prior deposition testimony, the Court will not consider it.

Moreover, the Court notes that the affidavit is also internally inconsistent. Plaintiff contends that he "followed the Jail's grievance process" by filing a grievance to the state representative, Mr. Weird. (Pl.'s Ex. C at ¶¶ 2, 3). However, the grievance process explicitly states that grievances must be filed with the Deputy Warden of Security.

Regarding the first grievance, Plaintiff stated in his deposition that he addressed it to an individual named Butch Weird. According to Plaintiff, Mr. Weird "was the state representative at Lawrence County for all of the prisoners that came down from the state at that time."[9] Plaintiff has adduced no evidence of Mr. Weird's actual capacity, nor has he identified who Mr. Weird's employer actually was,[10] but it is undisputed that Mr. Weird was not the Deputy Warden of Security at LCCF. As already explained, the grievance procedure at LCCF requires that inmate grievances be submitted to the Deputy Warden of Security, who will then respond to the grievance in writing. Plaintiff testified in his deposition that he told Mr. Weird that he "had the fall and [his] arm is hurting and nobody is doing anything. So [Mr. Weird] told [Plaintiff] to file a grievance."[11] Based on Mr. Weird's general advice to "file a grievance," Plaintiff erroneously addressed and filed the grievance to Mr. Weird, in direct contravention of the LCCF grievance procedure. Plaintiff did not suggest in his deposition that Mr. Weird instructed him to file a grievance in any way that was contrary to the LCCF grievance procedure. This procedure is plainly set forth in the Handbook; Plaintiff, by his own admission, just chose not to read it. Had he done so, he would have known not to file the grievance to Mr. Weird. Thus, he did not properly exhaust the first grievance.

Plaintiff also did not properly exhaust the second grievance because he did not file it within the deadline set forth in LCCF's grievance procedure. *See Jones*, 549 U.S. at 217-18 (proper exhaustion requires that the prisoners comply with the deadlines set by the grievance policy). In February 2013, the temporary prisoner transfer program ended and Plaintiff was transferred from LCCF back to SCI-Mercer. About nine months after his transfer to SCI-Mercer,

---

[9] Pl.'s Dep. at 20, 35-36.
[10] ECF Nos. 71 at ¶ 15, 76 at p. 2 ¶ 15.
[11] Pl.'s Dep. at 20.

7

in November 2013, Plaintiff mailed the second grievance to LCCF.[12] As noted, under the LCCF grievance procedure, the inmate must file the grievance within five days of the incident. Because he filed the second grievance at least nine months after the deadline expired, it was not properly exhausted.

Nevertheless, Plaintiff asserts that because he did not receive a response to either grievance, the grievance procedure at LCCF was not available to him, and, accordingly, his § 1983 claim is not barred by the PLRA.[13] *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (Jun. 6, 2016) ("an inmate is required to exhaust those, but only those, grievance procedures that are" available to him). Plaintiff argues that two decisions from the Court of Appeals support his position: *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013) and *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148 (3d Cir. 2016). In those cases, however, the Court simply held that when an inmate *properly* files a grievance in compliance with the institution's grievance procedures but the institution does not respond to it at all, *Small*, 728 F.3d at 273, or respond within the time period set by the institution even after multiple follow-up requests by the inmate, *Robinson*, 831 F.3d at 154, then the administrative remedies are not available to the inmate and the PLRA does not operate as a bar to those claims.

Notably, the plaintiff in *Small* did not exhaust "the vast majority of the grievances" in compliance with the jail's grievance procedures. 728 F.3d at 272. As to those claims that "were not substantially compliant with [the] grievance procedures," the Court held that they "could not

---

[12] In his deposition, Plaintiff provided the following explanation for why he filed the second grievance after his transfer: "After speaking to the attorney I was speaking to, she said we'll file another one. I explained to her that I filed one down when I was at Lawrence County and heard nothing from it. She said, well, just to cover your behind file another one, which I did." (Pl.'s Dep. at 52). Plaintiff stated that he was able to file the second grievance on the appropriate form because he found a blank LCCF Inmate Request Form in his property. *Id.* at 87.
[13] Pl.'s Br. at 8-11, ECF No. 73.

8

serve as a basis for satisfying the PLRA's exhaustion requirement" and were appropriately dismissed. *Id.* at 272-73. Of particular relevance here, *Small* concluded that the District Court correctly discounted letters that were not directed to the appropriate grievance officer/corrections staff and not filed within the applicable deadline period. *Id.* at 273. Further, the plaintiff in *Robinson* "pursued his claim correctly at every step," including submitting his grievance to the proper prison staff member within the filing deadline, and made multiple follow-up requests after the institution's failure to respond. *Robinson*, 831 F.3d at 153-54. Here, in contrast, Plaintiff did not follow-up with anyone at the jail after he did not receive a response to his incorrectly addressed or untimely filed grievances. In fact, given that he did not read the Handbook, he did not even know "how the grievance policy works down there" or if he "was supposed to hear a response from them or what."[14] Consequently, Plaintiff's position that the administrative remedies at LCCF were not available to him when he did not receive responses to grievances that were addressed and filed to the wrong official or filed nine months past the deadline, in direct contravention of the grievance procedure in place at LCCF, of which he had notice but chose to ignore, is without merit.

Aside from not receiving responses to his two grievances, Plaintiff does not make any other arguments that the grievance process was not available to him.[15] However, to the extent

---

[14] Pl.'s Dep. at 36.

[15] Specifically, the Court notes that Plaintiff does not argue that the grievance process was not available to him because inmates at LCCF could not actually file grievances with respect to complaints about inadequate medical treatment under the policy. *See Shumanis v. Lehigh Cty.*, ___ Fed. App'x ___, 2017 WL 192957, *2, 4 (3d Cir. Jan. 18, 2017) (vacating and remanding to the district court for a determination of factual questions surrounding the actual availability of administrative remedies when the plaintiff argued that he could not have filed a grievance relating to his claims because, "at least according to one reading" of the grievance procedure, complaints involving alleged violations of "federal law" are not grievable). Here, the text of the grievance procedure states, "All inmates have the right to file a complaint concerning: Violations of prison policy by Staff members. Unnecessary or Excessive Use of Force by Staff Members.

9

that Plaintiff suggests that it was not available to him because he filed a grievance to Mr. Weird based on Mr. Weird's general instruction to "file a grievance," such a position is without merit. The Supreme Court recently explained in *Ross v. Blake* that although "unavailability" is the only exception to mandatory PLRA exhaustion, it may be established in a number of ways. 136 S. Ct. at 1856-60. "Building on [Supreme Court] and lower courts' decisions," *Ross* gave examples of "three kinds of circumstances in which an administrative remedy, although officially on the books, is not [available]" to the prisoner: (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The Court finds that none of these circumstances are present in this case. First, there is no evidence to suggest that the officers at LCCF were unable or unwilling to provide any relief to inmates who file grievances to the appropriate prison official or file grievances within the five-day deadline. Second, as explained above, the grievance procedure is plainly written in the handbook, and there is no evidence in the record that, in practice, prisoners at LCCF could not discern or navigate it. Third, there is no evidence to suggest that Plaintiff was thwarted from taking advantage of the grievance process through machination,

---

Unsafe conditions existing within the facility. Unfair Disciplinary Actions." (punctuation in original). Plaintiff assumes in his submissions and arguments in opposition to summary judgment that the LCCF grievance procedure applies to inmate complaints about medical treatment, and, unlike the plaintiff in *Shumanis*, he makes no argument to the contrary. Therefore, as there is no evidence in the record to suggest otherwise, the Court will likewise assume for purposes of resolving the pending motions that the LCCF grievance procedure was available to inmate complaints concerning medical treatment.

misrepresentation, or intimidation by Mr. Weird or any other staff at LCCF. Plaintiff's mistake of filing the grievance to Mr. Weird after receiving a general instruction from Mr. Weird to "file a grievance" was self-imposed, the direct result of his failure to read the simple grievance procedure. It is clear that the grievance process was available to Plaintiff at LCCF: upon arrival, he received a Handbook explaining the grievance procedure, which he kept in his cell during his confinement there, and he testified in his deposition that he had access to grievance forms.[16] *See Small*, 728 F.3d at 272 (concluding that the administrative remedies were available to the plaintiff where he "knew of, and was able to access, [the] grievance procedures"). Further, he exercised no diligence and did not follow-up with anyone at LCCF when he did not receive a response to his first grievance because he did not know "how the grievance policy works down there" or whether he "was supposed to hear a response from them or what." Under these circumstances, the Court concludes that the grievance procedure at LCCF was available to Plaintiff, but he failed to properly comply with it. The Court simply has no discretion to excuse said failure. *Ross*, 136 S.Ct. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Therefore, summary judgment will be entered in favor of Defendants on Plaintiff's § 1983 claim because he failed to properly exhaust his grievances. As a result, the Court need not address the parties' arguments as to whether Plaintiff's claims are also barred by the statute of limitations. Because there are no remaining claims over which the Court has original

---

[16] Pl.'s Dep. at 36, 87-89. The grievance procedure provides, and Plaintiff's deposition testimony confirms, that grievances were filed on Inmate Request Forms. *Id.* at 36. Plaintiff testified that the forms "were on the block and an inmate would get them, fill them out, drop them into the box" pertaining to "whatever department, medical department, grievance department, maintenance or whatever." *Id.* at 36, 87.

jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claims. 28 U.S.C. § 1367(c)(3). An appropriate Order follows.

Dated: February 27, 2017.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All registered users of CM-ECF.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENRY BOYNES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-139 |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF LAWRENCE, SUSEN | ) | United States Magistrate Judge |
| ROSSINO, M.D.; FRANCES KLOSS, | ) | Cynthia Reed Eddy |
| R.N; ROXANNE DEMONACO, R.N., | ) | |
| and PRIMECARE MEDICAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW,** this 27th day of February, 2017, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** as follows:

1. Defendants' Motions for Summary Judgment (ECF Nos. 61, 63, 67) are **GRANTED** as to Plaintiff's Eighth Amendment claim.

2. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claims, and said claims are dismissed without prejudice.

3. The Clerk of Court is directed to mark this **CASE CLOSED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All registered users of CM-ECF.